# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEALED

| |
|---|
| ARTHUR R. WIELKOSZEWSKI,<br><br>     Plaintiff,<br><br>     v.<br><br>FRANCIS J. HARVEY, SECRETARY OF<br>THE ARMY,<br><br>     Defendant. |

CONFIDENTIAL **UNSEALED**

on
10-25-05
pursuant to order

BEFORE: Pogue, Judge, U.S.
Court of International Trade
(Sitting by Designation)

Civil Action No. 00-2236

[Defendant's motion to dismiss denied; cross-motions for summary judgment denied; case remanded for further proceedings consistent with this opinion].

Decided: June 20, 2005

John A. Wickham & Associates (John A. Wickham) for Plaintiff.

Kenneth L. Wainstein, United States Attorney, R. Craig Lawrence, Assistant United States Attorney, Susan Sutherland, Special Assistant United States Attorney, U.S. Department of Justice, Major Louis Birdsong, Of Counsel, Captain Rebecca Ausprung, Of Counsel, United States Army Litigation Division, for Defendant.

## OPINION

**POGUE, Judge:** Plaintiff appeals the determination of the Army Board for Correction of Military Records ("ABCMR") dismissing, for failure to file within the ABCMR's three-year statute of limitations, Plaintiff's 1988 request to have his records corrected to reflect separation from the Army due to disability. Plaintiff argues that due to misleading diagnoses and the Army's own apparent

UNSEALED

reopening of his case, the statute of limitations on his claim did not begin to run until 1986, making his 1988 filing timely. Furthermore, Plaintiff argues that even if the application were untimely filed, the ABCMR improperly failed to excuse the untimely filing, as it would have been within the "interest of justice" to do so. While the Court finds that Plaintiff's case was untimely filed, because the ABCMR determination not to waive the untimely filing relied on findings of facts wholly unsupported by the record, both Plaintiff and Defendant's motions for summary judgment are denied, and the case is remanded to the ABCMR.

## BACKGROUND

Plaintiff is a former captain in the regular and reserve components of the U.S. Army. Compl. at 1; Def.'s Stmt. Mat. Facts at para. 1. While attending the U.S. Military Academy at West Point, Plaintiff suffered sports injuries to his knees that resulted in several surgeries. Compl. at para. 1; Medical Board Narrative Summary, Admin. Rec. 225 (June 5, 1986). After his graduation in 1971, Plaintiff served as a helicopter pilot. In 1975, while on duty in Germany, Plaintiff was involved in a helicopter crash. Compl. at para. 2, Medical Board Narrative Summary, Admin. Rec. 225 (June 5, 1986). He suffered various injuries to his back, including a compression fracture to his lower spine. Id.

After this accident, Plaintiff was examined by physicians and issued "temporary profiles" limiting his allowable activity. Compl. at para. 2; Medical Condition - Physical Profile Record, Admin. Rec. 138-139 (temporary profiles assigned Jan. 6, 1976 and May 10, 1976). While he was not suspended from flying duty, Plaintiff's commanding officer requested that a Medical Evaluation Board ("MEB") evaluate Plaintiff's fitness for retention in the service. Letter from LTC William S. Graf to Commander of the 536th General Dispensary, Re: Request for Medical Evaluation, Admin. Rec. 143 (July 15, 1977). While the MEB found Plaintiff fit for duty, an evaluation from his commander shows that Plaintiff's duty performance was negatively impacted by chronic pain and stiffness resulting from the injuries. Medical Board Proceedings, Admin. Rec. 144 (Sept. 1, 1977, with further action Nov. 7, 1977); U.S. Army Officer Evaluation Report, Admin. Rec. 117, 118 (Aug. 25, 1977). By 1978, Plaintiff announced his desire to resign from the army. Compl. at paras. 10, 11. Plaintiff underwent a required separation physical. Report of Medical Examination, Admin. Rec. 159 (Aug. 15, 1978). The examining physical found Plaintiff's injuries such that he assigned a permanent physical profile of "313111."[1] Id. at 160. The examining physician also recommended

_____

[1]Under the Army's "PULHES" profiling system, a servicemember will be accorded a number of one through four for each of six areas. A one indicates complete healthiness, a four indicates that the servicemember's health in that area is such that duty performance must be drastically limited. Under this system,

another MEB be convened.  Id. at 160.  However, the request for an
MEB was denied, apparently on the basis of a review of Plaintiff's
x-rays.  Request from Illesheim to Orthopedic Medical Board, Admin.
Rec. 161 (Aug. 17, 1978) (as marked upon by Dr. Hopkins on Sept.
1).   Plaintiff was then discharged from the army, accepting a
commission as an aviator in the inactive ready reserve.  Compl. at
para. 22; Def.'s Stmt Mat. Facts at paras. 2-4.

However, Plaintiff continued to experience chronic pain and
stiffness from his injuries.   In 1979, five months after his
separation from the Army, he sought evaluation by the Veterans
Administration ("VA").   Veterans Administration Rating Decision,
Admin. Rec. 65 (Mar. 24, 1981) (listing date of claim as Jan. 30,
1979). In 1981, the VA assigned Plaintiff a combined service-
connected disability rating of 20% for his compression fractures
and arthritis.  Id. at 66.  In 1982, Plaintiff underwent a medical
evaluation by the Army Reserve, where he was given a profile of
"313111" and told he was unfit for all Army Reserve duty.  Def.'s
Stmt Mat. Facts at para. 3; Report of Medical Examination, Admin.
Rec. 182, 183 (June 7, 1982).  However, it was not until 1986 that
an MEB was convened.  Medical Evaluation Board Proceedings, Admin.
Rec. 223, 224 (Aug. 14, 1986).  This MEB referred Plaintiff to a

---

Captain Wielkoszewski was assigned "threes" for both P ("physical
capacity and stamina") and L ("lower extremities").  See Chapter
7-3, Army Regulation 40-501, available at http://www.usapa.army.
mil/pdffiles/r40_501.pdf (last accessed June 20, 2005).

C.A. 00-2236                                                    Page 5

Physical Evaluation Board ("PEB") to determine the proper disability rating and disability retirement pay. <u>Id.</u> at Quest. 15. The PEB, however, returned the claim without action, stating that because the injuries suffered by Plaintiff occurred during active duty service and not while he was in the Reserve, the Reserve could not rate him for disability pay. Letter from Col. Isaiah E. Barnwell, Jr. to Commander, Patterson Army Community Hospital, Re: <u>Return of Medical Evaluation Board (MEBD) Proceedings</u>, Admin. Rec. 235 (Oct. 9, 1986). Moreover, because the Army, at the time of Plaintiff's separation, found him fit for duty, he was not eligible for regular disability pay. <u>Id.</u> The PEB recommended that if Plaintiff felt he had a disabling condition at the time of his separation from the regular Army, that he appeal to the ABCMR.[2]

---

[2] It appears that Plaintiff attempted to contact the ABCMR regarding his status in 1984, but that the claim was forwarded to Col. Edward F. Cole, the Command Surgeon of the Army Reserve Personnel Center ("ARPERCEN"). <u>See</u> Letter from Col. Edward F. Cole, Command Surgeon, ARPERCEN, to Captain Arthur R. P. Wielkoszewski, USAdmin. Rec., Admin. Rec. 32 (Jan. 8, 1985). The record here does not contain this 1984 appeal to the ABCMR, nor does it contain the ABCMR's reply. However, Col Cole. described the note from the ABCMR forwarding Plaintiff's letter to ARPERCEN as saying only: "This missent to our area. Not ABCMR action." <u>Id.</u>

In certain cases involving military records, there are questions as to whether administrative remedies must be exhausted before a plaintiff may appeal to a specialized board such as the ABCMR. <u>See, e.g.</u>, <u>Ortiz v. Sec'y of Defense</u>, 41 F.3d 738, 743 (D.C. Cir. 1994). Here, however, it appears that the ABCMR forwarded Plaintiff's 1984 letter not because Plaintiff needed to exhaust administrative remedies, but because it did not understand how it might be of assistance. As Col. Cole wrote, "Apparently the ABCMR is not aware of the nature of the corrective action you wish." There are no arguments before the

<u>Id.</u>    Plaintiff did not so appeal until 1988.  Compl. at para. 38;

Def.'s Stmt Mat. Facts at para. 5.  In 1990, his claim was rejected

as untimely.  Compl. at para. 40; Def.'s Stmt Mat. Facts at para.

6.

The ABCMR is bound by a statute of limitations outlined at 10

U.S.C. § 1552(b) (2000). The relevant section states:

> No correction may be made [under this statute] unless
> the claimant or his heir or legal representative files
> a request for the correction within three years after
> he discovers the error or injustice.  However, a board
> established [under this statute] may excuse a failure
> to file within three years after discovery if its finds
> it to be in the interest of justice.

The ABCMR's determination briefly recited the facts of Plaintiff's

case.  Memorandum of Consideration, Admin. Rec. 39, 41-43 (Nov. 9,

1989).  The discussion section consisted of the following two

sentences:  "The alleged error or injustice was, or with reasonable

diligence should have been discovered on 2 September 1978, the date

of [Plaintiff's] discharge. The time for the applicant to file a

request for correction of any error or injustice expired on 2

September 1981."  <u>Id.</u> at 43.  The determination then concluded that

the filing was untimely and that, moreover, it would not be in the

interest of justice to excuse the untimely filing.  <u>Id.</u>

---

Court that the ABCMR's 1989 or 1999 determinations to reject
Plaintiff's claim stem from any failure on his part to exhaust
administrative remedies.

Plaintiff filed a request for reconsideration, which was denied in 1992. Application for Correction of Military Record, Admin. Rec. 46, 47 (Mar. 25, 1991); Letter from David R. Kinneer, Executive Sec'y, to Mr. Arthur R. Wielkoszewski, Admin. Rec. 22 (Aug. 31, 1992). In 1998, the Army invited Plaintiff to refile his case as part of a "reconsideration project" undertaken in response to a review of negative ABCMR determinations that found they had not been properly processed or reviewed. Letter from Karl F. Schneider, Deputy Assistant Sec'y (Army Review Boards), to Arthur R. Wielkoszewski, Admin. Rec. 21 (May 1, 1998). On reconsideration, the ABCMR again recited certain facts of Plaintiff's case. Memorandum of Consideration, Admin. Rec. 2, 3-4 (Mar. 19, 1999). The ABCMR once again found that Plaintiff's claim was untimely. Id. at 4.

## STANDARD OF REVIEW

The Court has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 704, and reviews the application of the ABCMR's statute of limitations de novo. Ortiz v. Sec'y of Defense, 41 F.3d 738, 740 (D.C. Cir. 1994). The Court will uphold the ABCMR's refusal to waive its statute of limitations unless such refusal is arbitrary, capricious, unsupported by substantial evidence, or not in accordance with law. Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

## DISCUSSION

Plaintiff alleges that the ABCMR improperly found that his application was untimely filed. In the alternative, Plaintiff alleges that even if his application were untimely filed, the ABCMR improperly failed to excuse the untimely filing. The Court addresses each argument in turn.

Failure to Timely File

Applications for records correction before the ABCMR are subject to a three-year statute of limitations, which begins to run once the complainant "discovers" the error or injustice. 10 U.S.C. § 1552(b). A servicemember is generally held to "discover" an error or injustice upon final action by the first board that is competent to pass upon eligibility for disability retirements. Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing Friedman v. United States, 159 Cl. Ct. 1, 24, 310 F.2d 381, 395-96 (1962). However, to the extent that the first competent board's misdiagnosis or misleading diagnosis interferes with a servicemember's appreciation of his medical status, the statute will not run until the misapprehension is corrected. Furlong v. United States, 138 Cl. Ct. 843, 846, 152 F. Supp. 238, 241 (1957).

Furthermore, if the decision of the first competent board is tentative, invites correction, or is later actually reopened by the service, the statute of limitations will not run until a final decision is made.  <u>Friedman v. United States</u>, 159 Cl. Ct. 1, 24, 310 F.2d 381, 396 (1962).

Plaintiff here makes three related claims. He claims that the first competent board to hear his claim was the ABCMR itself, as no PEB ever evaluated his claim to disability. Second, he claims that even to the extent the denial of a 1978 MEB could be considered to have tripped the rule of the first competent board, he was not thereby properly appraised of the permanence or seriousness of his injuries.  Third, Plaintiff claims that the Army itself reopened its evaluation of his service-related disabilities in 1986, when the Army Reserve conducted a new MEB and found that the injuries Plaintiff sustained while on duty with the regular Army were such as to make him unfit for all duty in the Reserve.

First, in his briefs before the Court, Plaintiff alludes to the fact that no PEB was conducted and that, thus, the ABCMR itself is the "first competent board". Pl.'s Cross-Mot. Summ. J. at 7-8; Pl.'s Reply Def.'s Opp'n Pl.'s Cross-Mot Summ J. at 8 (Pl.'s Reply). "A competent board is one that is statutorily authorized to pass on a service member's eligibility for disability pay. Normally, a PEB is the first appropriate and competent board to make such a decision."  <u>Coon v. United States</u>, 30 Fed. Cl. 531,

536 n.10 (1994) (citing <u>Real</u>, 906 F.2d at 1560). "If at the time
of discharge an appropriate board was requested . . . and the
request was refused . . ., the limitations period begins to run
upon discharge." <u>Real v. United States</u>, 906 F.2d at 1560.
"However, if a plaintiff neither requests nor receives
consideration by a board prior to discharge, a decision by a
correction board may constitute the first final decision for
purposes of determining when the claim accrued." <u>Coon</u>, 30 Fed. Cl.
at 536 n.10 (citing <u>Friedman v. United States</u>, 159 Ct. Cl. at 24,
310 F.2d at 396).

The physician at Plaintiff's 1978 separation physical
requested that an MEB be conducted. Report of Medical Examination,
Admin. Rec. 159, 160 (Aug. 15, 1978). However, an MEB was denied
on the basis of an examination of Plaintiff's 1977 X-rays. Request
from Illesheim to Orthopedic Medical Board, Admin. Rec. 161 (Aug.
17, 1978) (as marked upon by Dr. Hopkins on Sept. 1). MEBs and
PEBS perform somewhat different functions: the MEB diagnoses the
servicemember's medical status according to the retention standards
in Army Regulation 40-501, but does not pass upon whether the
condition makes the member physically unfit for service.[3] Thus, a

---

[3]"MEBs are convened to document a soldier's medical status
and duty limitations insofar as duty is affected by the member's
medical status . . . . Decisions regarding unfitness for further
military duty because of physical or mental disability are
prerogatives of PEBs (AR 635-40). MEBs will not express
conclusions or recommendations regarding such matters." Army
Regulation 40-400, Chapter 7-1, <u>available at</u> http://www.army.mil/

PEB is normally the first appropriate and competent board to pass
on the question of a service member's disability.  Coon, 30 Fed.
Cl. at 536 n.10 (citing <u>Real</u>, 906 F.2d at 1560).  However, the
statute of limitations begins to run in disability cases even where
a PEB is not requested at all, or where it is requested but denied.
It appears to the Court that the denial of a request for an MEB,
which is the prerequisite to a PEB, cannot be substantively
distinguished from the situation in which a request for a PEB is
denied.  Under the rule that states that the statute of limitations
runs once a competent board is requested and denied, <u>Real</u>, 906 F.2d
at 1560, it would therefore appear that an MEB is a competent
board, and its refusing a request to convene is sufficient to start
the clock on the statute of limitations.

      Second, Plaintiff argues that even if the denial of his
request for an MEB in 1978 tripped the rule of the "first competent
board," the history of his medical evaluations shows that he was
not properly apprised of the duration or seriousness of his
injuries at the time of separation from the active Army.  Pl.'s
Cross-Mot. Summ. J. at 14; Mem. Points & Authorities Supp. Pl.'s
Supp. Cross-Mot. Summ. J. & Resp. Def.'s Supp. Mot. Dismiss at 11-
15 ("Pl.'s Supp. Cross-Mot. Summ. J.").  Where a servicemember is
not made aware of the true nature of his condition, the statute of

---

usapa/epubs/pdf/r40_400.pdf (last accessed June 20, 2005).

C.A. 00-2236                                           Page 12

limitations will not begin to run until such time as he discovers

the error.  See <u>Coon v. United States</u>, 30 Cl. Ct. at 536 (holding

that where plaintiff was misled as to seriousness of condition, the

first competent board's actions were nonfinal); <u>McFarlane v. Sec'y

of the Air Force</u>, 867 F. Supp. 405, 411-12 (E.D. Va. 1994) (holding

that there is no "reasonable man" standard to the ABCMR's statute

of limitations; statute only begins to run upon actual discovery of

the error or injustice to be corrected).

      Following plaintiff's helicopter crash in 1975, plaintiff

experienced duty performance problems owing, at least in part, to

continuing stiffness and pain.  He was issued "temporary profiles"

excusing him from sustained physical activity.  Medical Condition

– Physical Profile Record, Admin. Rec. 138-139 (temporary profiles

assigned Jan. 6, 1976 and May 10, 1976).  Despite these profiles,

his commanding officer referred him to an MEB for evaluation of his

condition.    Letter from LTC William S. Graf to Commander of the

536th General Dispensary, Re: <u>Request for Medical Evaluation</u>, Admin.

Rec. 143 (July 15, 1977).  He was given a "picket fence" profile –

all ones on the PULHES scale – and returned to duty.  Medical Board

Proceedings, Admin. Rec. 144 (Nov. 7, 1977).

      A year later, Plaintiff decided to resign his commission.  At

his separation physical, he was assigned a PULHES profile of

313111, and referred to an MEB.  Report of Medical Examination,

Admin. Rec. 159, 160 (Aug. 15, 1978).  The request was returned

unacted-upon, however, with a notation that "this patient is qualified for separation." Request from Illesheim to Orthopedic Medical Board, Admin. Rec. 161 (Aug. 17, 1978) (as marked upon by Dr. Hopkins on Sept. 1). Plaintiff was discharged on September 2, 1978, accepting a commission in the U.S. Army's inactive ready reserve. Compl. at para. 22; Def.'s Stmt Mat. Facts at paras. 2-4. Less than five months later, Plaintiff sought evaluation of his knee and back injuries by the Veterans Administration. Veterans Administration Rating Decision, Admin. Rec. 65 (Mar. 24, 1981) (listing date of claim as Jan. 30, 1979). In 1981, the Veterans Administration assigned Plaintiff a combined 20% disability rating for his service-connected injuries. Id. at 66.

The ABCMR's determinations hold, albeit without discussion, that Plaintiff had sufficient facts as to be apprised of the true nature of his condition as of his 1978 separation. Memorandum of Consideration, Admin. Rec. 39, 43 (Nov. 8, 1989); Memorandum of Consideration, Admin. Rec. 2, 5 (Mar. 18, 1999) (finding claim untimely, although not fixing date of discovery). Plaintiff claims that he had no sufficient knowledge until 1986, when an MEB convened by the Army Reserve found him unfit for military service of any kind. Pl.'s Cross-Mot. Summ. J. at 14.

The Court recognizes that McFarlane counsels that the date of discovery should be the actual date, and not the date at which a hypothetical "reasonable person" would have discovered the error or

C.A. 00-2236                                                    Page 14

injustice. <u>McFarlane v. Sec'y of the Air Force</u>, 867 F. Supp. 405,

412 (E.D. Va. 1994). Nevertheless, this does not mean that the

actual date of discovery is whenever a plaintiff says it is. In

this particular case, it appears that Plaintiff understood his own

injuries to be disabling soon after his discharge from Army, when

he sought evaluation for disability benefits from the VA. In <u>Coon</u>

<u>v. United States</u>, the plaintiff's act of seeking benefits from the

VA and the Social Security Administration was held to have put the

plaintiff on notice of a potential disability claim. <u>Coon</u>, 30 Cl.

Ct. at 537-38. In that case, the plaintiff's disability had been

misdiagnosed, but had progressed to a point where the problem was

obvious and undeniable.

Here, Captain Wielkoszewski had suffered from several years of

chronic pain resulting from injuries to his knees and back. These

injuries had grounded him and required his reassignment to non-

aviation, non-armored duties. Medical Condition – Physical Profile

Record, Admin. Rec. 138-139 (temporary profiles assigned Jan. 6,

1976, May 10, 1976); <u>cf.</u> U.S. Army Officer Evaluation Report,

Admin. Rec. 117, 118 (Aug. 25, 1977) <u>with</u> U.S. Army Officer

Evaluation Report, Admin. Rec. 119, 120 (Aug. 23, 1978). They

forced him to seek treatment at the VA less than six months after

his discharge from the Army. Veterans Administration Rating

Decision, Admin. Rec. 65 (Mar. 24, 1981) (listing date of claim as

Jan. 30, 1979). The VA granted him a disability rating for

C.A. 00-2236

service-connected injuries in 1981. <u>Id.</u>  Moreover, in June of
1982, when Plaintiff was first brought in for a quadrennial
physical, he was found unqualified for the Army Reserve and given
a 313111 PULHES profile.[4]    Report of Medical Examination, Admin.
Rec.  182,  183  (June  7,  1982).    Finally,  by September  1984,
Plaintiff was directing letters regarding his condition to the
ABCMR, the Army Reserve's aviation branch, and possibly to others.
<u>See</u> Letter from Col. Edward F. Cole, Command Surgeon, ARPERCEN, to
Captain Arthur R. P. Wielkoszewski, USAR, Admin. Rec. 32 (Jan. 8,
1985).  Accordingly, Plaintiff's own actions show that he was aware
of the possibility of a claim in September of 1984, if not far
earlier.  He had been suffering from back pain for years, had been

_____

[4]Despite having been found unqualified for participation in
the Army Reserve, it appears that Plaintiff was not processed for
separation on the basis of the June 1982 physical. Rather, he was
brought in for two further physicals to evaluate him for a
possible return to flying status, one in September 1982, and one
in September 1983.  Both of these physicals assigned a picket
fence profile to Plaintiff.  Report of Medical Examination,
Admin. Rec. 188, 189 (Sept. 28, 1982); Report of Medical
Examination, Admin. Rec. 195, 196 (Sept. 22, 1983).  Around this
time, Plaintiff became frustrated with the lack of clarity
surrounding his case and began requesting assistance from various
parties, including the ABCMR, which forwarded his letter
regarding his status to Col. Cole of ARPERCEN.  <u>See</u> <u>supra</u> note 2.
Col. Cole lent his efforts to aiding Plaintiff to resolve the
question of his status and in 1986, an MEB convened by the Army
Reserve found Plaintiff unfit for military duty.  In its
determination on remand, the ABCMR will have the opportunity to
determine whether the inconsistency in the medical record
provides a basis for concluding that it is in the interest of
justice to waive the statute of limitations in this matter. See
discussion of the "interest of justice" analysis, <u>infra</u> pp. 20-
21.

C.A. 00-2236                                              Page 16

awarded benefits by the VA, and while the Army and Army Reserve,
and his temporary disqualification from flying had not once been
lifted since the 1975 helicopter accident, despite repeated
evaluations. Finally, he was actually found unfit for duty of any
kind in the USAR by reason of a 1982 examination. However, he
filed no request for correction of his active duty records to
reflect separation by reason of disability until 1988, more than
three years after discovery of the error or injustice.

     Plaintiff's third argument is that, because the Army itself
reopened his case in 1985-86, at the behest of Colonel Cole, the
1978 separation physical and subsequent denial of an MEB lose their
finality, and the statute of limitations begins to run instead upon
the 1986 denial of a PEB. Pl.'s Cross-Mot. Summ. J. at 14-15.
Plaintiff bases this argument on the holding in <u>Friedman v. United
States</u>, that "if . . . the armed service itself reopens the case,"
any action the service took prior to the reopening will be deprived
of finality. <u>Friedman</u>, 159 Cl. Ct. at 24, 310 F.2d at 396. Two
questions arise: first, whether the Army Reserve, in convening an
MEB to look into Plaintiff's condition, can be considered to be the
same service as the active Army, such that the Army Reserve's
actions can be considered actions by "the armed service itself."
Second, whether, even if the Army Reserve and the active Army are
elements of the same service, the Reserve's action constitutes a
reopening of Plaintiff's case. There is little available case law

C.A. 00-2236

on the issue: the cited language from <u>Friedman</u> comes only from that case's summary of the law; it rests on two earlier cases: <u>Loeb v. United States</u>, 133 Cl. Ct. 937 (1956) and <u>Capps v. United States</u>, 133 Cl. Ct. 811, 137 F. Supp. 721 (1956).  <u>See</u> <u>Friedman</u>, 159 Cl. Ct. at 16; 310 F.2d at 391.

   <u>Capps</u> is most instructive here, at least with regard to the first issue: plaintiff there had been a member of the Pennsylvania National Guard when his unit was called to active duty service in February 1941. <u>Capps</u>, 133 Cl. Ct. at 812; 137 F. Supp. at 722.  He suffered an injury in October of that year, and was commissioned a reserve officer[5] in October of 1942.  <u>Id.</u>  The plaintiff became incapacitated and in 1944 an Army Reserve retiring board found that an existing regulation stated that reserve officers were not eligible for benefits flowing from injuries suffered while the officer was a member of the enlisted corps. <u>Capps</u>, 133 Cl. Ct. at 812-813, 137 F. Supp. at 722.  In 1950, the Secretary of the Army changed the regulation to allow reserve officers disability retirement based on injuries suffered prior to obtaining reserve officer status.  <u>Capps</u>, 133 Cl. Ct. at 813, 137 F. Supp. at 723. Plantiff then appealed under the new regulation.  <u>Id.</u>

---

   [5]The name "Army Reserve" dates only from the mid-fifties. Prior to that time, there was an "Organized Reserve Corps," itself created from the former "Officers Reserve Corps" and "Enlisted Reserve Corps."  The Organized Reserve Corps fielded 29% of the active officers in World War II. <u>See</u> U.S. Army Reserve, History, <u>available at</u> http://www.armyreserve.army.mil/ usar/mission/history.aspx (last accessed June 20, 2005).

Most relevant to the instant case is that <u>Capps</u> had been a member of the National Guard; he was later commissioned as a reserve officer in the then Organized Reserve Corps.  <u>Capps</u>, 133 Cl. Ct. at 812; 137 F. Supp. at 722.  The court in <u>Capps</u> appears to find no controversy in the change; that is, the court did not hold that the National Guard and the Officer Reserve Corps were different services, or that, if they were, this affected plaintiff's claim.  <u>See generally</u> <u>Capps</u>, 133 Cl. Ct. 811; 137 F. Supp. 721 (1956).  Here, Plaintiff was an active duty army officer who, upon leaving the army, was commissioned as an officer in the army reserve.  <u>Capps</u> and <u>Friedman</u> would therefore appear to support considering the active duty army and the reserve to be part of the same service.[6]

However, even if the active duty Army and the Army Reserve are the same service for purposes of reopening a disability case, the court must still decide whether the Army Reserve's actions actually did reopen Plaintiff's case.  In <u>Capps</u> and in all other cases

_____

[6]Other facts support such a finding: the Secretary of the Army commands both the Army and the Reserve, the Army Regulations appear to cover both the active and reserve forces, and even the website of the Army Reserve describes the Reserve as "one of three components in the Army." <u>See</u> U.S. Army Reserve, Command Structure, <u>available at</u> http://www.armyreserve.army.mil/usar/organization/structure.aspx (last accessed June 20, 2005). However, note that one of the reasons this case is before the Court is that, upon finding Plaintiff permanently disabled, the Army Reserve told Plaintiff that it could not compensate him, as his injuries occurred while Plaintiff was in the active duty Army.

finding that the service reopened a case, the plaintiff had been deprived of disability pay or promotion by reason of a regulation which was reversed after the plaintiff's retirement. Upon reversing the regulation, the Army formally invited those who had been affected by it to reapply for benefits. See Capps, 133 Cl. Ct. 811, 137 F. Supp. 721 (1956), Loeb v. United States, 133 Cl. Ct. 937, 947 (1956), Schiffman v. United States, 162 Cl. Ct. 646, 653 (1963). To the extent that any error or injustice was worked by Plaintiff's discharge from the Army without disability pay, it was not the result of a regulation that was later overturned. Furthermore, the Secretary of the Army has not invited retired servicemembers to reapply based on changed circumstances. Thus, it would appear that Plaintiff's case would not fall among those already embraced by the "reopening" doctrine. There remains the question of whether the doctrine should be extended to cases like Plaintiff's, where on the basis of the same injury, the "same service" comes to different conclusions regarding fitness.

The Court thinks not. The "reopening" doctrine espoused in Capps, Loeb, and Schiffman is nothing more than a twist on the statutory rule that the servicemember's claim accrues from the time of discovery: where later-overturned regulations prevent a servicemember from receiving benefits, the ABCMR's statute of limitations will not begin to run until the regulatory change is made because, in fact, until the regulations were changed, there

was no error or injury to discover.[7]  In this case, however, the
error or injury was clear to Plaintiff long before his 1988 filing
with the ABCMR.  It did not require the changing of a regulation to
make apparent the possibility of error or injury.  As previously
discussed, Plaintiff's injuries forced him to seek compensation
from the VA as early as 1979; he was awarded such compensation in
1981.  Veterans Administration Rating Decision, Admin. Rec. 65, 66
(Mar. 24, 1981) (listing date of claim as Jan. 30, 1979).  In 1982,
an examination by the Army Reserve found Plaintiff unfit for all
duty, although the finding does not appear to have been acted upon
until after Plaintiff made inquiries in 1984.  See Report of
Medical Examination, Admin. Rec. 182, 183 (June 7, 1982); Letter
from Col. Edward F. Cole, Command Surgeon, ARPERCEN, to Captain
Arthur R. P. Wielkoszewski, USAR, Admin. Rec. 32 (Jan. 8, 1985).
Consequently, 1984 becomes the latest date at which Plaintiff can
realistically be said to have discovered an error or injury.

Accordingly, because the reopening doctrine is merely a
clarification of the discovery rule, modified for a particular and
unique situation not applicable here, Plaintiff is bound by the
time of the discovery of the error or injury.


Failure to Excuse the Untimely Filing

---

[7]In inviting the retired servicemembers to reapply, the
Secretary dispels any lingering ambiguity about whether the Army
intended retroactivity for the regulatory change.

C.A. 00-2236                                               Page 21

Having found that the Plaintiff's claim was untimely filed, the Court now considers whether the ABCMR acted properly in refusing to waive the untimely filing.  Under 10 U.S.C. 1552(b), a claim is timely if filed within three years of accruing; "[h]owever, a board established [under this statute] may excuse a failure to file within three years if its finds it to be within the interest of justice."  The interest of justice analysis requires the ABCMR to make a "cursory review" of the merits of the case, in order to decide whether the gravity of the harm alleged justifies overlooking the untimely filing.  See <u>Allen v. Card</u>, 799 F. Supp. 158, 164 (D.D.C. 1992).

Plaintiff's arguments on this point are twofold: first, Plaintiff points out that the language of the ABCMR determination, and the arguments made by Defendant in briefs before this Court, lend credence to the notion that the ABCMR went beyond a "cursory review" of the merits and in fact, conducted a full review of the merits in the case.  <u>See</u> Pl.'s Supp. Cross-Mot. Summ. J. at 8-9; Pl.'s Reply Def.'s Resp. Pl.'s Supp. Cross-Mot. Summ. J. at 1-2 ("Pl.'s Supp. Reply").  The second argument is that, regardless of whether a cursory or full review was conducted, the ABCMR's determination relies on factual statements that are shown to be wholly erroneous when checked against the record.  Pl.'s Supp. Reply at 5-10.

First, where the ABCMR goes beyond a cursory review and, in fact, conducts a full review of the merits, the ABCMR will be considered to have waived the failure to timely file. <u>See</u> <u>Muse v. United States</u>, 13 Cl. Ct. 372, 382-383 (1987). Were this not the case, the statute of limitations would be rendered a nullity. <u>See</u> <u>Allen v. Card</u>, 799 F. Supp. at 164. Despite this common-sense holding, Defendant insists that it somehow conducted both a full review and yet found that it was not in the interest of justice to excuse the failure to timely file. <u>See</u> Def.'s Resp. Pl.'s Suppl. Cross-Mot. Summ. J & Reply Pl.'s Resp. Def.'s Supp. Mot. Dismiss at 3. Under <u>Allen</u>, such a chain of events is not permissible. Rather than relying on Defendant's briefs, however, the Court looks to the ABCMR's determination to evaluate whether a full review was conducted.

In refusing to waive the untimely filing, the reconsideration determination employed "boilerplate language" that the ABCMR apparently adopted after this Circuit's decision in <u>Dickson v. Sec'y of Defense</u>, 68 F.3d 1396 (D.C. Cir. 1995); <u>see also</u> Pl.'s Supp. Reply at 3; ABCMR Memoranda of Consideration, Exs. A-C to Pl.'s Supp. Reply.[8]  The language is as follows:

---

[8]The 1990 ABCMR determination merely stated that "the applicant has not presented and the records do not contain sufficient justification to conclude that it would be in the interest of justice . . . to excuse the failure to file within the time prescribed by law."  Memorandum of Consideration, Admin. Rec. 39, 43 (Nov. 8, 1989).  However, the attached cover letter contained language similar to the boilerplate in the

C.A. 00-2236                                                Page 23

> Prior to reaching the determination that it was not in
> the interest of justice to excuse the failure to timely
> file, the Board looked at the entire file. It was only
> after all other aspects had been considered and it had
> been concluded that there was no basis to recommend a
> correction of the records that the Board considered the
> statute of limitations. Had the Board determined that an
> error or injustice existed it undoubtedly would have
> recommended relief in spite of the failure to submit the
> application within the 3 year time limit. The Board has
> never denied an application solely because it was not
> submitted within the required time.

Memorandum of Consideration, Admin. Rec. 2, 5 (Mar. 18, 1999).

The sentence "[i]t was only after all other aspects had been

considered and it had been concluded that there was no basis to

recommend a correction of the records that the Board considered the

statute of limitations" stands out.  Were it a true reflection of

what the ABCMR did, it could be incompatible with the purpose and

nature of any statute of limitations and with the interest of

justice analysis.  The statute of limitations has a power and a

purpose of its own; it does not merely function as a pretext or

convenient excuse for the ABCMR when it concludes that a claim has

no substantive merit.  Likewise, if the ABCMR is to find that the

interest of justice does not require waiver, it must state its

basis for so finding.

The boilerplate language, however, is not the only thing to

which the Court may turn in determining whether or not a full

---

reconsideration determination.  <u>See</u> Letter from J.C. Herbert,
Lieutenant Colonel, U.S. Army, Chief, Personnel Services Division
to Captain Arthur R. P. Wielkoszewski (April 3, 1990), Admin.
Rec. at 38.

review was conducted. The substance of the determinations themselves sheds light on the ABCMR's process. Both the original and reconsideration determinations begin with a statement regarding the requested relief. In the case of the original determination, there is then a two-and-a-half page statement of facts, followed by a discussion and determination comprising four sentences. See Memorandum of Consideration, Admin. Rec. 39, 40-43 (Nov. 8, 1989). It would be difficult to conclude that a full review of the merits of Plaintiff's substantive injury claim had been conducted based on this original determination.

The reconsideration determination omits a statement of facts, but briefly recounts new information submitted by Plaintiff regarding his VA disability rating and the diagnoses of orthopedists he consulted in the mid-nineties. Memorandum of Consideration, Admin. Rec. 2, 3-4 (Mar. 18, 1999). The discussion section which follows is lengthier than in the original determination, consisting of seven numbered paragraphs treating various aspects of Plaintiff's case. Id. at 4-6. However, certain facts cited by the ABCMR in its discussion section appear completely unsupported by the record. For example, the first numbered paragraph recounts the facts upon which the ABCMR stakes its claim that Plaintiff discovered the "error or injustice" in 1978. The paragraph states that "[t]he applicant was found fit by a PEB and at his ETS physical . . . he requested an MEB at the time

of his ETS . . . [B]ecause he was found fit at the ETS physical examination no MEB was warranted." Id. at 4.

The administrative record clearly shows that at no time was Plaintiff ever evaluated by a PEB.  Request from Illesheim to Orthopedic Medical Board, Admin. Rec. 161 (Aug. 17, 1978) (denying MEB evaluation); Army Regulation 40-400, Chapter 7-1, available at http://www.army.mil/usapa/epubs/pdf/r40_400.pdf (last accessed June 20, 2005) (examination by MEB prerequisite to referral to a PEB). Nor did Plaintiff request an MEB at the time of his separation physical; the examining physician requested the MEB. Report of Medical Examination, Admin. Rec. 159, 160 (Aug. 15, 1978). Finally, whether or not an MEB was warranted, Plaintiff was not found fit for service at the separation physical; rather, he was given a PULHES profile of 313111 and referred to an MEB to determine whether or not he had a service-disabling condition. Id.

Given the brevity of the determination and its apparent errors, this Court cannot determine that a full review of the merits was conducted in this case.  While the boilerplate language employed in the reconsideration determination, and even Defendant's briefing tantalizingly suggest that such a review did occur, the determination's own treatment of Plaintiff's case belies these statements.  The administrative record here is over two-hundred pages; the discussion portion of both the original and

reconsideration determinations by the ABCMR combined amount to less than a page and a half. Were a full review conducted, the Court would expect a longer and more detailed determination.[9]

However, it remains that even where the ABCMR conducts only a cursory review of the merits and determines that it is not in the interest of justice to excuse an untimely filing, its decision must be remanded if it appears that the determination was based on wholly erroneous facts. See <u>Dickson v. Sec'y of Defense,</u> 68 F.3d 1395, 1404 (D.C. Cir. 1995) (refusals to waive statute of limitations subject to APA review). The review of the merits undertaken pursuant to the interest of justice is to be cursory, but not obviously incorrect. The determination not to waive the statute of limitations must adhere at least to the arbitrary and capricious standard of review; here the Court cannot say that the determination adheres even to this most basic standard.


### CONCLUSION


While Plaintiff's claim was untimely filed, the ABCMR, in relying on mistaken facts in making its determination not to waive the requirement of timely filing, violated the standard that an

---

[9]Needless to say, were the Court to find that a full review had been conducted here, the Court would remand the decision issued for failure of substantial evidence.

C.A. 00-2236                                                   Page 27

agency's   determinations   not   be   arbitrary   or   capricious.
Accordingly,   the   Defendant's   motion   to   dismiss   is   denied;   the
parties'   cross-motions   for   summary   judgment   are   denied,   and   the
case   is   remanded   to   the   ABCMR   for   further   proceedings   consistent
with   this   opinion.

                                        /s/ Judge Donald C. Pogue
                                        Donald C. Pogue, Judge


Dated:  New York, New York
        June 20, 2005